FILED BY [signature] D.C.
05 AUG 10 PM 2:59
THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MEMPHIS PUBLISHING CO.,

Plaintiff,

vs.

NEWSPAPER GUILD OF MEMPHIS, LOCAL 33091,

Defendant.

No. 04-2620 B/P

REPORT AND RECOMMENDATION ON PLAINTIFF'S EXPEDITED MOTION TO STAY ARBITRATION PENDING LAWSUIT

Before the court is Plaintiff Memphis Publishing Company's Expedited Motion to Stay Arbitration Pending Lawsuit, filed on June 27, 2005 (dkt #47). Defendant Newspaper Guild of Memphis, Local 33091 filed its response on July 1. On July 12, 2005, the plaintiff filed a reply. The defendant filed a supplemental memorandum on July 25, 2005. The motion was referred to the Magistrate Judge for determination and/or report and recommendation. The court scheduled an evidentiary hearing for July 21, 2005, but due to the unavailability of defense counsel, the hearing was rescheduled to August 2, 2005. At the hearing, all parties were present and heard. Both parties presented witnesses and admitted numerous exhibits into evidence. (See Exhibit and Witness List to 8/2/05 hearing).

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 8-11-05

After carefully considering the entire record, including the arguments of counsel and evidence presented at the evidentiary hearing, as well as the various memoranda of law and attached affidavits,[1] the court recommends that the motion to stay be DENIED.

## I. PROPOSED FINDINGS OF FACT

Memphis Publishing Company d/b/a The Commercial Appeal ("MPC") is a manufacturing and publishing enterprise engaged in the manufacturing and printing of a daily newspaper, The Commercial Appeal, and various community editions. The Newspaper Guild of Memphis, Local 33091 (the "Guild") is a labor union that represents employees of MPC in the editorial, advertising, marketing, commercial, inside circulation, transportation, and maintenance departments. On December 5, 2000, MPC and the Guild entered into a collective bargaining agreement ("CBA"). The CBA includes a provision requiring that all grievances be submitted to mandatory arbitration. The CBA went into effect on January 11, 2000, and the date of termination as stated in the CBA was January 11, 2004. The CBA, however, includes a provision that the Guild refers to as an "evergreen clause," which states that "[w]ithin sixty (60) days prior to the termination of this Agreement, the Publisher or the Guild may initiate negotiations for a new Agreement. The terms and

[1]The court has also considered MPC's Motion to Amend, or in the Alternative Stay Arbitrations Pending Lawsuit, filed May 19, 2005 (dkt #32).

conditions of the Agreement shall remain in effect during such negotiations." Since November 2003, MPC and the Guild have been engaged in collective bargaining to negotiate a new CBA to replace the one that allegedly expired on January 11, 2004.

After January 11, 2004, the Guild filed four demands for arbitration on unrelated grievances. MPC contends it does not have to arbitrate these four grievances, and filed this declaratory action in federal court seeking a judgment declaring that the CBA expired on January 11, 2004, and that MPC is not obligated to arbitrate any grievances that arose after that expiration date. The Guild argues that the arbitration provisions of the CBA are still enforceable because the evergreen clause extended the CBA's expiration date. Nevertheless, the Guild agreed with MPC to hold the arbitration of these four grievances in abeyance until final judgment is entered in this federal action.

However, since the time that MPC filed this action in August 2004, the Guild has filed at least four additional demands for arbitration on four unrelated grievances. These four grievances involve reduction in force, disciplinary action for tardiness, scheduling of hours, and displaying a t-shirt over a chair. Unlike the original four grievances, the American Arbitration Association ("AAA") and the Guild have been unwilling to hold the arbitration of these new grievances in abeyance, and the Guild wishes to proceed to arbitration on these new grievances.

As a result, MPC filed the present motion, seeking an injunction[2] to prevent the Guild from arbitrating any grievances before the AAA. It is MPC's position that the grievances are not arbitrable under the expired CBA, and therefore, the matters should not proceed to arbitration until after this court decides the declaratory judgment action. The Guild opposes this motion, arguing that a federal statute, the Norris-LaGuardia Act, 29 U.S.C. § 101-115 ("NLA"), prohibits the court from enjoining resolution of these labor disputes through arbitration under the circumstances of this case.

At the August 2 evidentiary hearing, MPC took the position that the NLA does not apply in this case, and argued that the court should apply the traditional equitable standards that govern

---

[2]Although styled as an expedited "motion to stay," the parties agree that MPC is not seeking to stay the litigation, but rather is requesting that the court issue a preliminary injunction prohibiting the Guild from moving forward with the arbitration proceedings before the AAA. See Tejidos De Coamo, Inc. v. Int'l Ladies' Garment Workers' Unions, 22 F.3d 8, 14 (1st Cir. 1994)("a stay of arbitration is a coercive order directed not at the court's own proceedings but at the out-of-court activities of parties before the court."); Camping Construction Co. v. District Council of Iron Workers, 915 F.2d 1333, 1343 (9th Cir. 1990)("an order staying arbitration is a 'classic form of injunction,' not 'a mere step in the controlling of litigation before the court.'"). At the August 2 hearing, MPC explained that the term "stay" was used in its motion because in correspondence between AAA and MPC, the AAA informed the MPC that it would proceed with arbitration unless the court ordered that these matters be "stayed."

"ordinary" injunctions.[3] However, despite making this argument, MPC presented no evidence on the likelihood of success on the merits. Instead, MPC's proof related almost exclusively to its efforts to work with AAA and the Guild to stay the arbitration proceedings until the resolution of this litigation. MPC's witness, Warren Funk, General Counsel and Human Resources Director of The Commercial Appeal, testified at length about his communications with AAA and the Guild regarding holding the grievances in abeyance. MPC also admitted into evidence numerous documents demonstrating MPC's efforts to stay arbitration. However, none of MPC's evidence related in any meaningful way to the issue of whether MPC has shown a strong likelihood of success on the merits. Moreover, apparently because MPC believes that the NLA does not apply in this case, MPC did not address any of the

---

[3]These equitable standards are (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. See Overstreet v. Lexington- Fayette Urban County Gov't, 305 F.3d 566, 573 (6th Cir. 2002). Curiously, in its May 19 motion to amend complaint, MPC cited the case of C.B.S. Employees Federal Credit Unions v. Donaldson, Lufkin & Jenrette Securities, Corp., 716 F.Supp. 307 (W.D. Tenn. 1989), as establishing the standard that this court should apply in deciding MPC's motion to stay. The C.B.S. case does not apply here, however, since that case involved the standards a court must apply in deciding whether to stay litigation pending appeal of an order denying stay of arbitration, pursuant to Fed. R. Civ. P. 62. The present case involves neither a stay of litigation nor an appeal under Rule 62.

requirements of section 7 of the NLA at the evidentiary hearing.

## II. PROPOSED CONCLUSIONS OF LAW

### A. Does the NLA Apply?

As a threshold matter, the court must decide whether to apply the strict requirements under section 7 of the NLA or the less stringent equitable standards that govern "ordinary" injunctions. The Guild asserts that the NLA applies because this case involves or grows out of a labor dispute. MPC argues that the NLA does not apply.

The NLA was intended to limit the use of federal court injunctions in labor dispute cases. See Tejidos de Coamo, Inc. v. Int'l Ladies Garment Workers' Union, 22 F.3d 8, 11 n.5 (1st Cir. 1994). The act establishes a strong federal policy against the issuance of labor injunctions, except in very limited circumstances. Compare Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235 (1970), with Buffalo Forge Co. v. United Steelworkers, 428 U.S. 397 (1976). The Supreme Court has made it clear that, in those limited circumstances when injunctive relief is warranted under the NLA, it should be given to enforce - not impede - private labor arbitration. See, e.g., Textile Workers Unions v. Lincoln Mills, 353 U.S. 448 (1957); Boys Markets, 398 U.S. 235.

Under section 7 of the NLA, a federal court may issue an injunction in a case "involving or growing out of a labor dispute"

only after an evidentiary hearing and specified findings by the court. 29 U.S.C. § 107. The NLA defines "labor dispute" as "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c). This definition is extremely broad, and the Supreme Court has so interpreted it. See Burlington Northern R.R. v. Bhd. Of Maintenance of Way Employees, 481 U.S. 429, 441 (1987) (stating that the Supreme Court "consistently declined to construe 13(c) narrowly"); Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n, 457 U.S. 702, 712-14 (1982); Armco, Inc. v. United Steelworkers of Am., 280 F.3d 669, 679-80 (6th Cir. 2002). The Supreme Court has stated that a case involves a labor dispute if "the employer-employee relationship [is] the matrix of the controversy." Columbia River Packers Ass'n, Inc. v. Hinton, 315 U.S. 143, 147 (1942).

The Tejidos case is similar to the case at bar. In Tejidos, the company filed an action asking the court to declare that no contract existed between the company and the union. Tejidos, 22 F.3d at 9. Prior to the lawsuit, the company and union were parties to a collective bargaining agreement, which expired on February 29, 1992. Id. On April 17, 1992, the parties entered

into a "summary of agreement" in anticipation of reaching a new agreement, but apparently, the parties did not finalize a formal contract. Id. On November 30, 1992, the union sought to arbitrate a few employee disciplinary disputes, but the company objected to arbitration, arguing that the prior agreement had expired and that there was no new contract between the parties. Id. In deciding that the NLA applied, the court stated as follows:

> . . . the judicial virtues include respecting statutory language, and section 7 seems on its face to apply to our case. The Lincoln Mills and Boys Markets cases are distinguishable because they involved affirmative enforcement of collective bargaining contracts in support of arbitration. Also, what law can be found in the circuits may lean slightly in favor of the view that section 7 does apply here . . .
>
> On balance, we are disposed to hold that section 7 does govern a suit to enjoin a labor arbitration – unless and until the Supreme Court says otherwise. Carving out new exceptions to the Norris-LaGuardia Act, or markedly extending old ones, is primarily a matter for the Supreme Court. We think such a step is entirely possible; but we do not think it so certain that we should anticipate it. Modern labor law, after all, is largely a construct of Congress, the Labor Board, and the Supreme Court. The edifice does not need another architect.

Id.; accord AT&T Broadband v. IBEW Local 21, 317 F.3d 758, 760 (7th Cir. 2003); Lukens Steel Co. v. United Steelworkers, 989 F.2d 668, 675-79 (3d Cir. 1993); Camping Const. Co. v. Iron Workers, 915 F.2d 1333, 1340-50 (9th Cir. 1990); In re Marine Eng'rs Beneficial Ass'n, 723 F.2d 70, 79 (D.C. Cir. 1983); Pritchard Elec. Co. v. Int'l Brotherhood of Elec. Workers, 306 F.Supp.2d 603, 607 (S.D.W.V. 2004); KenAmerican Res., Inc. v. Int'l Union, United Mine

Workers of America, 911 F.Supp. 19, 22 (D.D.C. 1996); Meijer, Inc. v. United Food and Commerical Workers Union Local 951, No. 94:CV:682, 1994 WL 782239, at *4-5 (W.D. Mich. Oct. 17, 1994). MPC has not cited any cases in which a court has directly addressed this same issue and ruled to the contrary.[4]

In the present case, the labor grievances involve reduction in the work force, disciplining an employee for tardiness, scheduling of employee hours, and disciplining an employee for draping a t-shirt over a chair. Clearly, these grievances all involve or grow out of a labor dispute. In fact, MPC has never argued that these grievances are not labor disputes. This court agrees with the Tejidos line of cases, and submits that section 7 of the NLA applies in this case.

**B. The NLA Requirements**

The court, having concluded that the NLA applies, now turns to the act's requirements. The NLA establishes procedural requirements for the issuance of injunctions which are made jurisdictional:

> No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a

---

[4]At the August 2 hearing, MPC argued that the case of Sandvik AB v. Advent Int'l Corp., 220 F.3d 99 (3d Cir. 2000) supported the plaintiff's position. That case is not applicable here, however, as it does not address the applicability of the NLA. That case also involved a motion to compel arbitration, not a preliminary injunction.

> strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

29 U.S.C. § 101. The jurisdictional nature of the procedural requirements is reiterated in § 7, 29 U.S.C. § 107, where the requirements are set forth. "Only after it has heard the testimony of witnesses in open court, with an opportunity for cross-examination, and after it has made findings of fact on issues enumerated in the statute does a federal court have jurisdiction to issue an injunction 'in any case involving or growing out of a labor dispute.'" Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America-UAW v. LaSalle Machine Tool, Inc., 696 F.2d 452, 456 (6th Cir. 1982).

Section 7 provides that in order for a court to issue an injunction, the court must find:

> a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained . . . ;
>
> (b) That substantial and irreparable injury to complainant's property will follow;
>
> (c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;
>
> (d) That complainant has no adequate remedy at law; and
>
> (e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

29 U.S.C. § 107.[5]

MPC must satisfy all of these requirements in order to obtain an injunction, but has failed to do so. First, there is nothing to suggest that "unlawful acts" have been threatened and will be committed. All the grievances involve either interpretation of the "evergreen clause" or the terms and conditions of employment (e.g. work schedules, discipline for tardiness, reduction in force, employee conduct at work, etc.). MPC has never alleged - either in its various memoranda of law or at the evidentiary hearing - much less presented any evidence that would even suggest that unlawful acts are threatened or will be committed.

Rather, the "unlawful acts" described in subsection (a) include acts such as violence, intimidation, threats, vandalism, breaches of the peace and criminal acts - it requires more than a breach of contract or a tortious act. See, e.g., New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 562-63 (1938); Philadelphia Marine Trade Assn's v. Local 1291, Int'l Longshoremen's Ass'n, 909 F.2d 754, 757 n.7 (3d Cir. 1990)(finding "no authority for equating breach of peace with unlawful act"); Marine Transp. Lines, Inc. v. Int'l Org. of Masters, Mates & Pilots, 770 F.2d 1526, 1530 (11th Cir. 1985)(suggesting that

---

[5]It is unclear whether the fifth requirement would apply in this case. See LaSalle Machines Tools, 696 F.2d at 456. The court need not resolve this issue, however, since MPC has failed to satisfy other requirements under section 7. See infra.

"unlawful acts" may be limited to things akin to "violence, intimidation, threats, vandalism, breaches of the peace and criminal acts"); Scott v. Moore, 680 F.2d 979, 986 (5th Cir. 1982)(en banc), rev'd on other grounds, 463 U.S. 825 (1983); Wilson & Co. v. Birl, 105 F.2d 948, 952 (3d Cir. 1939)(construing "unlawful acts" narrowly); Pritchard Elec. Co., 306 F.Supp.2d at 612 ("To include a garden variety breach of contract into the NLA's 'unlawful acts' requirement would render the statutory requirements for an injunction superfluous.").

Second, as to substantial and irreparable injury, MPC contends that if the injunction is not issued, MPC will be forced to proceed to arbitration, which may turn out to be a waste of time and resources if the court ultimately concludes that the CBA expired on January 11, 2004. However, this is not the type of irreparable injury contemplated by the courts in granting injunctions. See, e.g., AT&T Broadband, 317 F.3d at 762 (stating that "it has long been established that the expense of adjudication is not irreparable injury."); Tejidos, 22 F.3d at 14-15 ("It is true that participating would cause one form of loss, namely, the time and expense of litigation before the arbitrator. But courts have ordinarily not deemed litigation expense to be substantial and irreparable injury warranting an injunction."); In re Marine Eng'rs Beneficial Ass'n, 723 F.2d at 78; Pritchard Elec. Co., 306 F.Supp.2d at 612 (finding that requiring employer to arbitrate in

the wrong forum and harm to employer's reputation did not meet substantial and irreparable harm standard); KenAmerican Res., Inc., 911 F.Supp. at 23 (concluding that submitting to arbitration is not irreparable injury per se).

MPC also argues that if the arbitrator rules in favor of the Guild, then MPC would be harmed if it is then required to reinstate terminated employees or otherwise take some action to the detriment of current employees. The court submits that this also does not amount to irreparable injury. See AT&T Broadband, 317 F.3d at 762 ("Where's the irreparable injury? If AT&T loses in the arbitration, the union will seek to enforce its victory; AT&T can defend on the theory that it had not agreed to arbitrate this kind of dispute."); In re Marine Eng'rs Beneficial Ass'n, 723 F.2d at 79 ("in the unlikely event that the arbitrator . . . should exceed his authority under the [CBA], or otherwise render an unlawful or unenforceable award, there is nothing to prevent an aggrieved party from challenging the arbitrator's decision."). Moreover, the potential injury is much too speculative at this very early stage of the arbitration proceedings. See East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co., __ F.3d __, 2005 WL 1567326, at *3 (7th Cir. July 6, 2005)("speculative injuries do not justify this extraordinary remedy [of a preliminary injunction].").

Because MPC has not met all the requirements under section 7 of the NLA, the court recommends that the motion to stay be

DENIED.[6]

## III. CONCLUSION

For the reasons above, it is recommended that the court DENY Plaintiff's Expedited Motion to Stay Arbitration Pending Lawsuit.

Respectfully submitted.

TU M. PHAM
United States Magistrate Judge

August 10, 2005
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN TEN (10) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN TEN (10) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

---

[6]The court need not address the remaining requirements of section 7 in order to deny the motion. Moreover, even assuming, *arguendo*, that the traditional preliminary injunction equitable factors apply in this case - and they do not - the motion to stay should nevertheless be denied because MPC presented no evidence on likelihood of success on the merits. On the other hand, the Guild during cross-examination of Mr. Funk elicited testimony that shows that MPC and the Guild had entered into numerous CBAs over the past twenty-plus years, that these prior versions of the CBA contained similar evergreen provisions, and that MPC has arbitrated grievances during the prior CBAs' evergreen periods - that is, the period of time between the stated expiration date on the CBA and the effective date of the next CBA. Finally, as discussed above, MPC has not shown that it would suffer irreparable harm.

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 76 in case 2:04-CV-02620 was distributed by fax, mail, or direct printing on August 11, 2005 to the parties listed.

L. Michael Zinser
THE ZINSER LAW FIRM
150 Second Ave., N.
Ste. 410
Nashville, TN 37201

Barbara Camens
BARR & CAMENS
1025 Connecticut Avenue
Suite 712
Washington, DC 20036

Glenn E. Plosa
THE ZINSER LAW FIRM
150 Second Ave.,N.
Ste. 410
Memphis, TN 37201

Samuel Morris
GODWIN MORRIS LAURENZI & BLOOMFIELD, P.C.
50 N. Front St.
Ste. 800
Memphis, TN 38103

Honorable J. Breen
US DISTRICT COURT