IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MEMPHIS PUBLISHING COMPANY,

    Plaintiff,

v.                                                                                  No. 04-2620 B

NEWSPAPER GUILD OF MEMPHIS,
LOCAL 33091,

    Defendant.
_____

ORDER DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION
_____

FACTS AND INTRODUCTION

The Plaintiff, Memphis Publishing Company ("MPC" or the "Employer") prints and publishes a daily newspaper in Memphis, Tennessee known as *The Commercial Appeal*. The Defendant, Newspaper Guild of Memphis, Local 33091 (the "Guild" or the "Union"), is a labor organization serving as the exclusive bargaining representative for a unit of MPC employees, including those working in its editorial, advertising, marketing, commercial, inside circulation, transportation and maintenance departments. The Guild and MPC had maintained a collective bargaining relationship at least since the 1950s and in December 2000 entered into a collective bargaining agreement (the "CBA" or the "Agreement") for the term beginning on January 11, 2000 and ending January 10, 2004. It is undisputed that, by its terms, the CBA was to expire at 12:01 a.m. on January 11, 2004. The Agreement provided that "[w]ithin sixty (60) days prior to the termination of this Agreement, [MPC] or the Guild may initiate negotiations for a new Agreement. The terms and conditions of the Agreement shall remain in effect during such negotiations." The language of

this so-called "evergreen clause" had been present in every collective bargaining agreement between MPC and the Union since at least 1977. It is undisputed that, during previous gaps between collective bargaining agreements, the parties arbitrated numerous grievances arising after the termination of the previous agreement and in none of these proceedings did the Employer challenge its obligation to arbitrate based on the expired status of the most recent agreement. In some of those arbitration proceedings, the arbitrators made reference to the evergreen clause. In fact, counsel for MPC stated in a 1998 post-hearing brief filed in an arbitration occurring during one of these contractual hiatuses that "[t]he company is a party to a collective bargaining agreement . . . with the Guild, effective from January 11, 1993 to January 10, 1996. The terms and conditions of employment set forth in the [a]greement have remained in force since the [a]greements expiration pursuant to the [a]greement's evergreen clause."

In a letter dated September 16, 2003, MPC notified the Guild president that it was terminating the CBA pursuant to Section 8(d) of the National Labor Relations Act as of 12:01 a.m. on January 11, 2004. The letter also stated that, with respect to grievances arising after the termination date of the CBA, the Employer would determine on a case-by-case basis those grievances subject to arbitration after the Agreement's expiration. Furthermore, counsel for MPC discussed therein arrangements for the commencement of negotiations for a successor collective bargaining agreement. As of the date of this order, the negotiations continue with no new agreement having been penned.

On April 2, 2004, the Union filed a grievance under the CBA concerning work assignments for community editors and, on July 1, 2004, filed a written demand for arbitration of the issue with the American Arbitration Association (the "AAA"). Two more demands for arbitration were

submitted by the Defendant on July 28, 2004 regarding the denial of unlimited access to MPC's facility by a non-employee union representative and the unpaid suspension of an employee represented by the Guild. The incidents from which both demands arose occurred after January 11, 2004. The Plaintiff refused to participate in arbitration and requested that the AAA withhold further processing of the demands. On August 9, 2004, MPC brought this declaratory judgment action requesting a finding by this Court that no collective bargaining agreement exists between the parties and that the last CBA between them expired and terminated as of January 11, 2004. The Guild counterclaimed, seeking an order compelling arbitration and, alternatively, alleging breach of a labor contract under 29 U.S.C. § 185. The counterclaim also referenced a November 2004 reduction in force by MPC which the Union grieved on December 2004, alleging violation of the CBA, and on which it filed a demand for arbitration with the AAA following denial of the grievance by MPC in January 2005. Before the Court are the parties' cross-motions for summary judgment.

## STANDARD OF REVIEW

Rule 56(c) provides that a

> . . . judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

3

ANALYSIS OF THE PARTIES' CLAIMS

This action amounts to a dispute over whether MPC had a duty to arbitrate grievances after its termination of the CBA. It is the position of the Plaintiff that it has an unfettered right to terminate the Agreement under § 8(d) of the National Labor Relations Act. Section 8(d) provides in pertinent part that "the duty to bargain collectively shall . . . mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification--"

> (1) serves a written notice upon the other party to the contract of the proposed termination or modification . . .;
> (2) offers to meet and confer with the other party for the purpose of negotiating a new contract . . .;
> (3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice . . .; and
> (4) continues in full force and effect . . . all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later.

29 U.S.C. § 158(d) (1988). MPC argues that its right to terminate the CBA under § 8(d) is fundamental and statutory and, therefore, there is no longer a duty to arbitrate and its motion for summary should be granted. The Guild does not dispute that the Plaintiff gave proper notice of termination in accordance with § 8(d), but maintains that the duty to arbitrate post-expiration survived by virtue of the evergreen clause. Indeed, expiration of a collective bargaining agreement does not, as MPC suggests, necessarily extinguish the employer's obligation to arbitrate grievances. See Providence Journal Co. v. Providence Newspaper Guild, 308 F.3d 129, 132 (1st Cir. 2002) ("The expiration of a collective bargaining agreement does not necessarily extinguish a party's obligation to arbitrate grievances. In fact, a presumption favors arbitration in such circumstances."); Gen. Drivers, Salesmen & Warehousemen's Local Union No. 984 v. Malone & Hyde, Inc., 23 F.3d 1039, 1045 (6th Cir.), cert. denied, 513 U.S. 1057, 115 S.Ct. 665, 130 L.Ed.2d 599 (1994)

(observing that a "party's obligation to arbitrate does not automatically cease upon termination of the collective bargaining agreement").  The Supreme Court recognized, in Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO, 430 U.S. 243, 252, 97 S.Ct. 1067, 1072, 51 L.Ed.2d 300 (1977), reh'g denied, 430 U.S. 988, 97 S.Ct. 1689, 52 L.Ed.2d 384 (1977), the arbitrability of a dispute arising after termination of the collective bargaining agreement. See also Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 205, 111 S.Ct. 2215, 2225, 115 L.Ed.2d 177 (1991) (presumption that disputes arising under a collective bargaining agreement are arbitrable remains after termination of the agreement, explaining Nolde Bros.); Malone & Hyde, 23 F.3d at 1045.

A collective bargaining agreement should be read taking into account rules of construction favoring arbitration.  "National labor policy favors the arbitration of labor disputes."  Utility Workers Union of Am., Local 118 v. Ohio Edison Co., No. 97-4332, 1998 WL 869941, at *2 (6th Cir. Dec. 3, 1998) (citing United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Malone & Hyde, 23 F.3d at 1043).  "The presumption favoring arbitration is based on a policy recognizing arbitration as a 'substitute for industrial strife' and on the belief that arbitrators, more so than the courts, possess the proper experience and expertise to resolve labor disputes."  Malone & Hyde, 23 F.3d at 1043 (citing Warrior & Gulf Navigation Co., 363 U.S. at 578, 80 S.Ct. at 1351; Litton Fin. Printing Div., 501 U.S. at 213-14, 111 S.Ct. at 2229 (Marshall, J., dissenting)) (internal citations omitted).

The Sixth Circuit has stated that

> [t]he guiding principles for determining whether a grievance is arbitrable are well established:  (1) a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration; (2) unless the parties clearly and unmistakably provide otherwise, whether a collective bargaining agreement creates

5

> a duty for the parties to arbitrate a particular grievance is an issue for judicial determination; (3) in making this determination, a court is not to consider the merits of the underlying claim; and (4) where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Moreover, in cases involving broad arbitration clauses the Court has found the presumption of arbitrability particularly applicable, and only an express provision excluding a particular grievance from arbitration or the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.

United Steelworkers of Am. v. Mead Corp., Fine Paper Div., 21 F.3d 128, 131 (6th Cir. 1994) (internal citations and quotation marks omitted); see also Int'l Union v. Cummins, Inc., 434 F.3d 478, 485 (6th Cir. 2006) (citing Mead).  The role of the Court "is limited to deciding if the party seeking arbitration is making a claim which on its face is governed by the contract."  Int'l Ass'n of Bridge, Structural, & Ornamental Iron Workers, Local Union No. 44 v. J & N Steel & Erection Co., Inc., 8 F.App'x 381, 385 (6th Cir. 2001) (citing Malone & Hyde, 23 F.3d at 1043) (internal quotation marks omitted).

The arbitration clause contained in the CBA applies to "a matter involving interpretation or application of this Agreement, or the arbitrability of an issue arising under this Agreement."  The clause further provides that "[i]t is expressly agreed that renewal of this Agreement shall not be a proper subject of the above arbitration agreement."  When the Court has before it the issue of arbitrability, as is the case here, it

> generally faces two separate scenarios.  In one instance, the court must determine whether the collective bargaining agreement covers the dispute at issue.  This is a matter for the court to decide and requires an examination of the scope of the arbitration clause itself.  The second instance concerns whether there is a valid agreement to arbitrate.  This may occur if a party argues (1) that they never entered into an agreement to arbitrate at all, or (2) that the arbitration agreement has expired or terminated.

Id. at 385-86 (internal citations omitted).  According to the Sixth Circuit panel in J & N Steel,

6

"where the dispute turns not on whether the parties ever agreed to arbitrate, but rather whether an agreement to arbitrate has expired or terminated, the question of termination is for the arbitrator. The reason an arbitrator, not the court, should decide whether an arbitration agreement has expired or terminated is because resolution of the issue involves examining and interpreting the termination provisions of the agreement." Id. at 386 (internal citations omitted).  The panel, quoting the Second Circuit's decision in Abram Landau Real Estate v. Bevona, 123 F.3d 69, 73 (2d Cir. 1997), stated further that

> [t]he question whether an otherwise valid collective bargaining agreement has expired or has been terminated is different.  In these situations, the parties' dispute is not really over what an arbitration clause provides; rather, it is a dispute over the interpretation of the collective bargaining agreement, e.g. termination clauses, or in Landau's case an "evergreen clause."

Id. at 386.

In Abram Landau, where, as here, the primary "dispute between the parties [was] whether the 'evergreen clause' prolonged the life of the [collective bargaining] agreement," the court explained that

> [i]n determining whether an arbitrator or a court gets to interpret a termination clause or "evergreen clause," the dispositive question is whether the parties have agreed that an arbitrator should decide that question.  Where the agreement contains a sweeping arbitration clause covering all disputes involving the meaning of terms and provisions of the agreement and where the arbitration clause does not expressly exclude disputes over the termination provision or the "evergreen clause," disputes over these matters should be submitted to arbitration.

Abram Landau, 123 F.3d at 73 (internal citations omitted).

The arbitration clause at issue in this case is, under the law of this Circuit, a broad one.  See United Steel Workers of Am. v. Century Aluminum of Ky., No. 04-5991, 2005 WL 3338257, at *3 (6th Cir. Dec. 8, 2005) (collective bargaining agreement language defining arbitrable grievance to

7

include "'disputes concerning the interpretation or application of or compliance with the provisions of' the CBA, constitutes a broad arbitration clause analogous to the arbitration clauses previously held to warrant a strong presumption of arbitrability"); United Steelworkers of Am. v. Commonwealth Aluminum Corp., 162 F.3d 447, 451 (6th Cir. 1998) (finding that the "grievance procedure broadly encompass[ed] 'matters involving the interpretation and application of all provisions of this Agreement'"); Mead Corp., 21 F.3d at 132 (arbitration clause covering "grievances charging that the Company has violated this Agreement and involving the interpretation of, or compliance with, this Agreement" is a broad one, requiring resolution by an arbitrator); Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. United Screw & Bolt Corp., 941 F.2d 466, 468, 472-73 (6th Cir. 1991) (arbitration clause encompassing "matter[s] involving the interpretation or application of, or compliance with any of the terms of this Agreement" is broad). While the Plaintiff insists that the provision that "renewal of this Agreement shall not be a proper subject of the above arbitration agreement" supports its position, the evergreen clause grievance did not involve "renewal" of the CBA but rather the continuation of the expired Agreement for the purpose of covering post-expiration grievances.  Further, MPC has offered no caselaw supporting the notion that "renewal" and the subject of the instant evergreen clause are interchangeable so as to exclude post-expiration grievances from the ambit of the arbitration agreement.  Nor does a limitation on the scope of an arbitration clause automatically render it "narrow."  See Warrior & Gulf Navigation Co., 363 U.S. at 582-85, 80 S.Ct. at 1353-54 (arbitration clause including "differences aris[ing] . . . as to the meaning and application of the provisions of this Agreement, or [to] local trouble of any kind" was "quite broad," in spite of additional clause excluding disputes that were "strictly a function of management"); see also Ohio Edison Co., 1998 WL 869941, at *3

8

(noting that some limiting language, such as the word "only" may lead the court to conclude the arbitration clause was a "narrow" one and, therefore, deserving of a weaker presumption of arbitrability).

As the arbitration clause is a broad one, the presumption of arbitrability is particularly applicable to this case. See Mead Corp., 21 F.3d at 132 (where arbitration clause is broad, presumption of arbitrability is "particularly applicable"). This broad clause, as a consequence, "surely covers a dispute involving the validity of the "evergreen clause" and, therefore, is a proper subject for arbitration." See Abram Landau, 123 F.3d at 74; see also Teamsters Union Local No. 20 v. Georgia-Pacific Corp., No. 98-4016, 2000 WL 712356, at *2 (6th Cir. May 22, 2000) ("The CBA provides that disputes arising as to the interpretation of the CBA are to be arbitrated. The issue of whether or when the CBA terminated involves interpretation of the CBA and must be arbitrated"). Moreover, because the CBA does not contain an express provision excluding the evergreen clause from arbitration, this Court will not exclude disputes involving the validity thereof from the arbitration process absent forceful evidence of a purpose to do so. See Mead Corp., supra.

With respect to the remaining grievances, the sole basis for MPC's refusal to arbitrate all but one -- that involving the community editors -- was that the CBA had expired at the time the grievances were filed. The Plaintiff does not argue that these grievances would not have been appropriate if raised during the contractual period. Thus, the arbitrability of those grievances turns exclusively on the interpretation of the evergreen clause -- that is, whether the clause is valid and, therefore, whether the post-expiration grievances alleging violations of the CBA may be arbitrated. This is a question for the arbitrator.

The MPC has suggested that, in addition to being brought to its attention subsequent to the

9

expiration of the CBA, the community editor grievance does not implicate the Agreement at all, as it actually arose from a Memorandum of Agreement (the "MOA") entered into between the Employer and the Union separate from the CBA. According to the motion papers, the MOA grew out of a plan to create community editions of *The Commercial Appeal*. Readers would be asked to provide the bulk of the news tips, community stories and photographs for the sections while community editors would solicit content, assist in preparing stories for publication, and write occasional stories, tidbits and columns and perform limited photography work. The hiring of persons to fill these new community editor positions would permit the newspaper's regular reporters to concentrate on "higher end" journalism and more complex reporting.

> The MOA provided that
>
> [t]he Community Editors will be part of the bargaining unit, and shall be paid not less than the After Fourth Year scale A-2. Pursuant to the "flexibility" language found in the second sentence of Article X, paragraph 1, the parties have agreed that the provisions of the first sentence of said Article X, paragraph 1 do not apply to the extent that the Community Editors shall be considered "bureau persons" in Article X, paragraph 4. Community Clerks will be part of the bargaining unit, and paid in category A-3.

The "Articles," as well as the pay scale categories, referred to in the provision are contained in the CBA. The Guild contends that, by improperly assigning "higher level" reporting tasks to certain community editors without a corresponding increase in wages, the MPC violated both the MOA *and* the CBA. Specifically, the Defendant avers that, by performing A-1 level work under the CBA as "journalists," defined as "[a]ll employees who contribute directly to the editorial content of the paper, whether by producing or editing copy or art, including reporters, photographers, copyreaders, re-write men/women, special writers and librarians with master's degrees in library science," community editors were entitled to the higher wages to be paid to journalists under Article IV of the

10

CBA. Although it is a close question, it is the opinion of the Court that the issue of whether the community editors were actually performing tasks that entitled them to the category A-1 salaries provided for in the Agreement could be considered "a matter involving interpretation or application of" the CBA for purposes of the arbitration clause. Therefore, in this Court's view, the arbitrability of this grievance also depends, at least in part, on the continuing validity of the CBA pursuant to the evergreen clause and should be evaluated by the arbitrator.

## CONCLUSION

For the reasons articulated herein, the motion of the Plaintiff for summary judgment is DENIED and the cross-motion of the Defendant for an order compelling arbitration is GRANTED. Accordingly, this declaratory judgment action is DISMISSED in its entirety, all motions remaining pending herein are DENIED as moot, and the Case Manager is directed to remove all settings in this case from the Court's calendar.

IT IS SO ORDERED this 15th day of February, 2006.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE